UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| GOD'S ERA, | * | |
|---|---|---|
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:18-cv-11065-IT |
| | * | |
| NEW ERA CAP CO., INC., | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER
March 31, 2020

Plaintiff God's Era brings suit against Defendant New Era Cap Co., Inc. ("New Era") alleging false designation of origin and unfair competition under § 43(a) of the Lanham Act (Count 1), trademark infringement in violation of Massachusetts common law (Count 2), and unfair competition in violation of Massachusetts common law (Count 3), all relating to Defendant's 2017 use of an allegedly infringing mark combining a New Era registered trademark and the mark of a third party brand, Fear of God. Complaint [#1]. Pending before the court is Defendant's Motion for Summary Judgment [#47]. For the following reasons, Defendant's motion is GRANTED.

I.  Factual Background

The following facts are drawn from Plaintiff's Response to Defendant's Statement of Supposedly Undisputed Facts ("Pl.'s SOF") [#57], the Declaration of Averil Hilton ("Hilton Decl.") [#58], and the parties' other supporting documentation as indicated. The court views all evidence in the light most favorable to Plaintiff as the non-moving party.

Plaintiff God's Era is a sole proprietorship formed in March 2015 with an address in Chelsea, Massachusetts. Pl.'s SOF ¶ 1 [#57]. Averil Hilton is the company's owner and only employee. Id. ¶ 2. God's Era sells or has sold t-shirts, sweatshirts, hoodies, and lounge pants, id.

¶ 34, combining the "streetwear of urban youth culture together with an unabashed love and passion for God and Christianity." Hilton Dec. ¶ 2 [#58]; see Pl.'s SOF ¶¶ 39-40 [#57]. God's Era targets the Christian retail market and "individuals that like urban streetwear." Pl.'s SOF ¶¶ 38-39. In 2015, Hilton began selling God's Era garments to friends, family, members of her church, coworkers at her employer in Rhode Island, and attendees at gospel concerts. Hilton Dec. ¶ 4 [#58]; Pl.'s SOF ¶¶ 22-23 [#57]. At some point, Hilton built a website to sell God's Era garments more broadly.

Defendant New Era Cap Co., Inc. ("New Era") is a multinational company founded in 1920 that "sold more than 60 million caps worldwide, and more than 40 million in the United States" in 2018. Heimburg Decl. ¶ 2 [#51]; Pl.'s SOF ¶ 56 [#57]. Since 1996, "one of New Era's principal target markets has been urban streetwear consumers." Pl.'s SOF ¶ 60 [#57].

On September 20, 2016, New Era was introduced to Jerry Lorenzo, the owner of luxury fashion brand Fear of God. Pl.'s SOF ¶¶ 64-67 [#57]; Burger Decl. ¶ 2 [#50]; Sep. 20 Email [#50-1]. On or before December 16, 2016, in a collaboration between New Era and Fear of God, Fear of God created the Accused Design. Pl.'s SOF ¶ 67 [#57]; Burger Decl. ¶ 4 [#50]; Dec. 16 Email [#50-2]. The Accused Design places a New Era design in use since at least 1993 directly above the words "FEAR OF GOD" written in a font in use by Fear of God since at least 2013. Pl.'s SOF ¶¶ 69, 86 [#57].

Meanwhile, on October 24, 2016, Plaintiff filed an Application (No. 87213132) to register the "GOD'S ERA" Mark in Class 25 with the USPTO. Hilton Decl. ¶ 6 [#58]. Plaintiff's Application was published on March 22, 2017. Pl.'s SOF ¶ 99 [#57]. New Era opposed the registration by filing a Notice of Opposition in the USPTO before the Trademark Trial and Appeal Board (Opposition Proceeding No. 91233557), alleging that the registration of the GOD'S ERA

Mark would cause a likelihood of consumer confusion with a number of already-registered NEW ERA Marks. Hilton Decl. ¶ 7 [#58]. God's Era's Application remains pending.

In mid-2017, Defendant began using the Accused Design on select goods sold or distributed in connection with the Major League Baseball All-Star Game held in Miami, Florida on July 11, 2017. Pl.'s SOF ¶ 66 [#57]. The Accused Design appeared on the back side of a hang tag attached to All-Star Game caps and on a shopping bag distributed through The Alchemist, a luxury fashion store. Id. ¶ 71. New Era delivered one shipment of the All-Star Game caps to Fear of God in Los Angeles in May 2017 and a second to The Alchemist in Miami sometime prior to July 11, 2017. Id. ¶¶ 71, 77; Burger Decl. ¶ 6 [#50]. New Era also sold 72 of the caps through its website.[1] Pl.'s SOF ¶¶ 80, 82 [#57]. The only promotional materials using the Accused Design are two Instagram posts posted by Jerry Lorenzo on April 8, 2017, and July 8, 2017. Id. ¶ 81; Complaint Exh. B 5-6 [#1-2].[2] New Era did not produce, sell, or distribute any products, hang tags, or promotional materials bearing the Accused Design after the 2017 All-Star Game. Pl.'s SOF ¶ 83 [#57].

God's Era produced receipts totaling $235 for sales of three t-shirts, five hoodies, and one sweatshirt from God's Era's founding in March 2015 through the July 11, 2017 All-Star Game. Pl.'s SOF ¶ 10 [#57]; Berchou Decl. Exh. E ("God's Era Receipts Produced in this Litigation") [#49-5]. As of March 26, 2018, God's Era had made no sales "in interstate commerce." Id. ¶ 18. The first record of an online sale by God's Era is dated June 1, 2018. Id. ¶ 28. As of Hilton's March 4, 2019, deposition, she considered the "relevant consuming public" for God's Era apparel to be in

---

[1] New Era notes that sales of the Fear of God caps were made through its website "between 2017 and 2018," but that it is unclear "whether any of those caps were shipped with the accused hang tag." Def.'s Memo. 6 n.2 [#52]; see also Reply Memo. 9 n.5 [#60]. Plaintiff did not dispute this at the March 4, 2020, hearing.
[2] The April 6, 2017 Instagram post, captioned "#everythingOG," shows part of a cap and the front and back of the cap hang tag. Complaint Exh. B 6 [#1-2]. The July 8, 2017 Instagram post, captioned "#thankyou #dayone," shows a man carrying the shopping bag. Id. at 5.

Boston.[3] Id. ¶ 19; Hilton Dep. I (Exh. A) 50:9-51:10 [#49-1]. God's Era began selling hoodies on Amazon.com in January 2019 and had sold two as of May 2, 2019. Pl.'s SOF ¶ 29 [#57]. As of October 4, 2019, God's Era's Facebook page had 89 followers and its Instagram page had 50. Hilton Decl. ¶ 4 [#58].

Hilton did not "really advertise[]" the God's Era website because of its "lack of user-friendliness." Pl.'s SOF ¶ 45 [#57]; Hilton Dep. I (Exh. A) 20:7-11 [#49-1]. Aside from God's Era's website, Facebook page, and Instagram page, and since January 2019, on Amazon.com, Hilton has advertised God's Era by handing out flyers, placing flyers in bags containing God's Era products, staffing a vendor's booth in Brockton, Massachusetts, in September 2017, and promoting the brand in person at an unspecified number of local gospel concerts, religious trade shows, and on the street. Pl.'s SOF ¶ 44 [#57].

II.     Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party and resolves any disputes of material fact in their favor. See Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). A "genuine dispute" is one that, based on the evidence submitted at this stage of litigation, "a reasonable jury could resolve ... in favor of the non-moving party," and a "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks

---

[3] As of her October 4, 2019 declaration, God's Era had sold apparel to an unspecified number of customers in Rhode Island, New York, Ohio, California, and South Carolina, Hilton Decl. ¶ 4 [#58], and had produced receipts for total online sales of $230 of goods. Pl.'s SOF ¶ 30 [#57].

omitted). If further inquiry into the facts is necessary to apply the relevant law, summary judgment is not appropriate. Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006).

The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

III. Analysis

A. Count 1: Lanham Act § 43(a) False Designation of Origin and Unfair Competition

"To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008). Defendant argues that summary judgment should enter in its favor as to Plaintiff's Lanham Act infringement claim because the GOD'S ERA Mark was not entitled to trademark protection at the time of the alleged infringement in 2017. Def.'s Memo. 7 [#52]; Def.'s Reply 4-8 [#60].

Because Plaintiff's GOD'S ERA Mark was not registered, the court must determine whether and to what extent the GOD's ERA mark was entitled to common law trademark protection at the time of the alleged infringement. Defendant does not challenge on summary judgment the distinctiveness of Plaintiff's mark. See Pl.'s Memo. 8 [#56]; see generally Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 8 (1st Cir. 2008) ("[a] mark is entitled to trademark protection if it is capable of functioning as a source-identifier of goods," that is, if it is "distinctive"). Rather, Defendant argues that there is no consumer recognition of the GOD'S ERA Mark such that Plaintiff has acquired exclusive rights to its use in any territory, or, at a minimum, that Plaintiff's rights were

5

limited to the Boston area in 2017 and there is no evidence of alleged infringement in that region. Def.'s Memo. 4-7 [#52]; Def.'s Reply 4-9 [#60].

Because "it is the trade, and not the mark, that is to be protected," a trademark "extends to every market where the trader's goods have become known and identified by his use of the mark." Thrifty Rent-A-Car Sys. v. Thrift Cars, Inc. 639 F.Supp. 750, 752 (D. Mass. 1986), aff'd 831 F.2d 1177 (1st Cir. 1987) (quoting Hanover Star Milling Co. v. Metcalf, 240 U.S. 403 (1916)). The geographical scope of a common law trademark is a question of fact that depends on reputation, advertising, and sales. Id. at 753. The test "is whether the party's mark is sufficiently known there, or whether its sales there are of sufficient volume, to create a likelihood of confusion among consumers, should a second user enter the same territory." Id. (citing Sweetarts v. Sunline, Inc., 380 F.2d 923, 927 (8th Cir. 1967)); see also J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §26:29 (5th ed. 2017-2019) (hereinafter, "McCarthy").[4] "Sporadic and inconsequential sales cannot establish an owner's exclusive right to its mark." Thrifty Rent-A-Car Sys., 639 F.Supp. at 754.

---

[4] The Eighth Circuit, in Sweetarts v. Sunline, Inc., directed the district court evaluating market penetration on remand to consider "plaintiff's dollar value of sales at the time defendants entered the market, number of customers compared to the population of the state, relative and potential growth of sales, and length of time since significant sales." 380 F.2d 923, 929 (8th Cir. 1967). On a second appeal, the Eight Circuit found that the plaintiff had not proven sufficient market penetration in the eight disputed states, where, in all but one of the states, it had less than $1,059 worth of sales in any given year and where there was no demonstration of an upward sales trend in any state. Sweetarts v. Sunline, Inc., 436 F.2d 705, 709 (8th Cir. 1971). The Third Circuit, in Natural Footwear, Ltd. V. Hart, Schaffner & Marx, 760 F.2d 1383, 1399 (3d Cir. 1985), listed four factors relevant to determining the extent of territorial market penetration: (1) volume of sales; (2) growth trends; (3) number of buyers in a ratio to potential customers; and (4) amount of advertising, the fourth factor replacing the Eight Circuit's "length of time since significant sales." It then found that market penetration was "*de minimus*" in states where Roots "achieved neither gross sales of over $5,000 nor a total of over 50 customers…in at least two of the three years for which sales data were available." Id. at 1400.

During the two years between its founding in March 2015 and the July 2017 All-Star Game, God's Era made nine sales totaling $235. Pl.'s SOF ¶ 10 [#57]; Berchou Decl. Exh. E ("God's Era Receipts Produced in this Litigation") [#49-5]. All of those sales were made in person by Ms. Hilton in the greater Boston area. See Hilton Decl. ¶ 4 [#58] (explaining that she began selling "to friends, family, members of [her] church and people at gospel concerts"); Pl.'s SOF ¶ 22-23 [#57] (referencing sales to co-workers at her employer in Rhode Island and at a 2017 gospel concert in Boston, Massachusetts). As of the date of the 2017 All-Star Game, God's Era had made no sales online or otherwise "in interstate commerce." Pl.'s SOF ¶¶ 18, 28 [#57].[5]

The court assumes without deciding that, as of the period of the alleged infringement in 2017, Plaintiff had acquired exclusive rights to the use of the GOD'S ERA Mark in the greater Boston area. However, those rights cannot be found to extend to Miami, Florida, where Defendant's caps with hang tags bearing the Accused Mark were sold and the bags bearing the Accused Mark were distributed. See Thrifty Rent-A-Car Sys. 639 F.Supp. at 752. Nor can they be found to extend to Los Angeles, California, where Defendant sent one shipment of caps to Fear of God. See id. There is no evidence in the record that any product bearing the Accused Mark was sold to a customer in the greater Boston area and Defendant mounted no marketing campaign employing the Accused Mark in that region or otherwise.[6] Because Plaintiff has not established that the GOD'S

---

[5] God's Era argues that the use of its website to sell its products beyond the Boston area expands the geographic extent of its common law trademark rights. However, at the time of the alleged infringement, Plaintiff had not recorded any online sales. Pl.'s SOF ¶ 28 [#57]. The mere fact that a website featuring a trademark can be accessed nationwide does not mean that the trademark is established in all markets. McCarthy § 26:30.50 (citing Echo Drain v. Newsted, 307 F. Supp. 2d 1116 (C.D. Cal. 2003)). Rather, the location of actual buyers indicates the extent of territorial penetration. Id. (citing Hanginout, Inc. v. Google, Inc., 54 F. Supp. 3d 1109 (S.D. Cal. 2014)).

[6] The only promotional material in the record -- the April 6 and July 8, 2017 Instagram posts, see Complaint Exh. B 5-6 [#1-2] – were posted by Jerry Lorenzo, the owner of Fear of God, and not by New Era. Pl.'s SOF ¶ 81 [#57]. There is no evidence in the record of the parameters of the contractual relationship between New Era and Fear of God or Jerry Lorenzo to support a claim of

7

ERA Mark was protected in the geographic regions where the products bearing the Accused Mark were sold during 2017, it has not established the possibility of infringement on the part of Defendant.

This court, thus, need not reach the question of whether use of the Accused Mark presents "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." See Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008) (citing Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Winship Green Nursing Ctr., 103 F.3d 196, 200 (1st Cir.1996)).

Defendant's motion for summary judgment as to the alleged violation of Plaintiff's trademark rights under the Lanham Act is GRANTED.

B. Counts 2 and 3: Common Law Trademark Infringement and Common Law Unfair Competition

Defendant argues that, to the extent the court finds Plaintiff's trademark protection to reach beyond the Boston area, summary judgment should enter in its favor as to Plaintiff's common law infringement[7] and unfair competition[8] claims for the same reasons as it should enter in the claim brought under the Lanham Act because the common law claims are judged by the same likelihood

---

vicarious or other liability for third party actions. See generally 1-800 Contacts, Inc. v. Lens.com, Inc., 722 F.3d 1229, 1249 (10th Cir. 2013).

[7] To prevail on a claim of trademark infringement under Massachusetts common law, a plaintiff must show that the plaintiff owns a valid and protectable mark, the defendant made a commercial use of that mark without the plaintiff's consent, and the defendant's use of the mark is likely to create confusion, causing harm to the plaintiff. See Jenzabar, Inc. v. Long Bow Grp., Inc., 977 N.E.2d 75, 82 n.11 (Mass. App. Ct. 2012).

[8] To prevail on a claim of unfair competition under Massachusetts common law, a plaintiff claiming unfair competition may show either palming off (where a claim arises when a person tries to pass his goods or services as those of another) or secondary meaning (where a claim arises if the plaintiff can show that his mark is distinctive and confusion would arise if the defendant is allowed to copy the plaintiff's distinctive features). Prof'l Economics, Inc. v. Prof'l Economics Servs., Inc., 421 N.E.2d 1221, 1224-27 (Mass. App. Ct. 1981).

of confusion standard. Def.'s Memo. 18 [#52] (citing Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1209 (1st Cir. 1983)). Plaintiff agrees that the likelihood of confusion standard is the same for all three claims. Pl.'s Memo. 5 n.1 [#56] (citing Purolator, Inc., v. EFRA Distributors, Inc., 687 F.2d 554, 560-61 (1st Cir. 1982)).

However, because the court finds that Plaintiff's common law trademark rights, to the extent they existed at all, did not extend to the regions where the products bearing the Accused Mark were sold during 2017, the court does not reach the question of likelihood of confusion. Instead, because Counts 2 and 3 rely on Plaintiff's common law trademark rights in the GOD'S ERA Mark, and "the test for common law trademark infringement is the same as under the Lanham Act," United Oil Heat, Inc. v. M.J. Meehan Excavating, Inc., 129 N.E.3d 856, 860 (Mass. App. Ct. 2019), Plaintiff's Massachusetts common law claims also fail. See also Bose Corp. v. Ejaz, 732 F.3d 17, 26 n.7 (1st Cir. 2013) (noting that "the common law trademark claims in…Massachusetts…require the same elements as the federal claim"). As such, Defendant's motion for summary judgement on Counts 2 and 3 is GRANTED.

IV. Conclusion

Accordingly, for the reasons discussed in Part IV, Defendant's Motion for Summary Judgment [#47] is GRANTED. To the extent Plaintiff seeks injunctive relief,[9] there has been no showing of intended future use of the Accused Mark. As such, the court does not reach that issue.

IT IS SO ORDERED.

Date: March 31, 2020 /s/ Indira Talwani
United States District Judge

---

[9] Plaintiff's Complaint [#1] seeks, among other relief, a permanent injunction enjoining Defendant and any successors and assigns from using the term "GOD" in connection with any NEW ERA Marks and from otherwise unfairly competing with Plaintiff in any manner.